206 So.2d 252 (1967)
M.G. GAMMAGE and Celia Gammage, Husband and Wife, Nell V. Gammage, a Single Woman, Gordon H. Gammage and Janet B. Gammage, Husband and Wife, and Leland D. Gammage and Mary Lou Gammage, Husband and Wife, Appellants,
v.
Eugene H. TURNER, Individually and Doing Business As Turner Realty Company, Not Incorporated, W. Lawrence Whidden, George Brooks, Gulf Atlantic Corporation, a Florida Corporation, and Phillips Petroleum Company, a Delaware Corporation, Appellees.
No. 7389.
District Court of Appeal of Florida. Second District.
December 8, 1967.
Rehearing Denied February 15, 1968.
*253 C.J. Hardee, Jr., of Hardee, Ott & Hamilton, Tampa, and Hall & Brown, Arcadia, for appellants.
Lewis E. Purvis, Arcadia, and Allen, Knudsen, Swartz, Richardson & DeBoest, Fort Myers, for appellees Eugene H. Turner, d/b/a Turner Realty Co., not incorporated, W. Lawrence Whidden, George Brooks and Gulf Atlantic Corp.
LILES, Chief Judge.
The appellant-plaintiffs are appealing from a summary final decree which dismissed their cause of action.
The appellants owned approximately 2560 acres of land in Manatee County. The appellants were approached by Tommy Permenter, a licensed real estate agent and employee of Turner Realty Company, who asked if the appellants were interested in selling their land for $300.00 per acre. Mr. Permenter informed appellants that Turner Realty was acquiring land options in order to interest a phosphate company in purchasing the land for mining purposes.
At the behest of Turner Realty the appellants entered into an option agreement with appellee Lawrence Whidden and at the same time entered into a commission agreement with Turner Realty whereby the appellants agreed to pay "to Turner Realty Company, ten per cent (10%) of all monies received from this option and sales agreement at time of closing." The following day Lawrence Whidden assigned the option *254 to the newly formed Gulf Atlantic Corporation. Gulf Atlantic Corporation was owned by Eugene Turner, Lawrence Whidden, and George Brooks. Gulf Alantic subsequently assigned the option to Phillips Petroleum Company and Phillips agreed to pay Gulf Atlantic $19,200 upon delivery of the option, another $19,200 when the option was exercised and five cents per dry ton for any phosphate mined on the property.
Thereafter, Phillips informed the appellants that it would exercise the option. The appellants, after being advised by their attorney that they were under a legal duty to convey the property, sold the land to Phillips pursuant to the option.
Subsequently, the appellants filed suit in equity against Eugene Turner, individually and doing business as Turner Realty Company, Lawrence Whidden, George Brooks, Gulf Atlantic Corporation, and Phillips Petroleum Company. The appellants alleged that Eugene Turner was in an agency relationship with the appellants and therefore owed them the duty of a fiduciary. The plaintiffs further alleged that Turner, Whidden, and Brooks had formed Gulf Atlantic Corporation for the purpose of realizing fraudulent secret profits from the transaction. The appellants requested a forfeiture of commissions due Turner Realty Company under the commission agreement and an accounting of the profits realized by Eugene Turner, Lawrence Whidden, and George Brooks and Gulf Atlantic Corporation and a forfeiture of these profits to appellants. Phillips Petroleum was not accused of any wrongdoing but was joined so that the court would have jurisdiction in the event that it ordered any monies paid over to the appellants.
After an amended complaint was filed appellees moved to strike the complaint for sham. At the hearing the trial judge denied defendants motion to dismiss for sham but upon agreement of all parties entered a summary final decree dismissing the complaint. In his order the trial court cited Doujotos v. Leventhal, 271 Mass. 380, 171 N.E. 445 (1930), and 69 A.L.R. 1080, in holding that there had been no ratification of the alleged fraud, however, the trial court did hold that the complaint failed to state a cause of action in that there was no showing of a trust or fiduciary relationship and dismissed appellants' cause of action with prejudice.
The first question presented is whether appellants' pleadings were sufficient to allege an agency relationship between appellants and Eugene Turner.
In the complaint appellants allege that Mr. Permenter sought out the appellants and induced them to execute an option in favor of Lawrence Whidden. Had the relationship ended here it might have been found as claimed by appellees to constitute merely the purchase of an option. But allegedly the relationship went further and the appellants, at Permenter's request, entered into a commission agreement with Turner Realty. This allegation, if proven, is sufficient to establish Eugene Turner as broker for the landowners and therefore their agent owing to them a fiduciary duty. In a deposition filed in the case, Eugene Turner was asked:
"Q: Mr. Turner, I asked you a moment ago, did you enter into a real estate broker's agreement with the Gammages, and you said you did.
A: I said commission agreement.
Q: Did you?
A: Yes, sir.
* * * * * *
Q: Mr. Thad Whidden was the attorney who organized the corporation, wasn't he?
A: Yes, sir.
Q: So, Mr. Brooks, he was familiar with the entire transaction from the very beginning as far as your transaction with the Gammages was concerned?
A: When you say `entire transaction' sir, what do you mean by that question?

*255 Q: He knew about the deal with the Gammages on the land, is that right?
A: Yes, sir.
Q: Had you introduced him to some of the Gammages out there?
A: Yes, sir.
Q: Did he know that you were representing the Gammages as a real estate broker?
A: Yes, sir.
Q: And that you were obtaining a commission for the sale of this land?
A: Right.
* * * * * *
Q: Now, did you sign that agreement?
A: Which agreement, sir?
Q: The real estate brokerage commission agreement.
A: Yes, sir.
Q: You signed it as a broker?
A: Yes, sir."
In Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 420, 54 A.L.R. 1173 (1927), Justice Terrell said:
"The term `fiduciary or confidential relation,' is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused  in which confidence has been reposed and betrayed. The origin of the confidence is immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist wherever one man trusts in and relies upon another. * * *
"* * *
"Stripped of all embellishing verbiage, it may be confidently asserted that every instance in which a confidential or fiduciary relation in fact is shown to exist will be interpreted as such. The relation and duties involved need not be legal; they may be moral, social, domestic or personal. If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief. The origin of the confidence is immaterial."
According to appellants' complaint, following the formation of the fiduciary relationship the appellees entered into a corporation whereby they stood to secretly realize handsome profits from the assignment of the option to Phillips Petroleum. These facts, if proven, would establish a breach of fiduciary duty. 1 Fla.Jur., Agency, § 61. In passing, it should be remembered that the existence of an agency relationship is generally considered to be a question of fact. Shaffran v. Holness, 102 So.2d 35 (Fla.App. 1958).
The second question presented to this court involves the doctrine of ratification. Did the appellants by consummating the sale ratify the alleged fraud and thereby lose any cause of action they might have against their fraudulent agent? The trial judge, basing his decision on Doujotos v. Leventhal, 271 Mass. 380, 171 N.E. 445 (1930) and the annotation found at 69 A.L.R. 1080, held that there had been no ratification. We agree with that conclusion.[1]
The instant case, wherein the appellants are striving to go against their alleged agent who is not a party to the contract and who is allegedly guilty of fraud, must be distinguished from the more common situation in which one party to the contract seeks to go against the other party to the contract.
*256 By going ahead with the sale the appellants apparently ratified the acts of Turner in regards to the contract with Phillips and they are not now free to alter their contractual benefits or burdens. But they cannot be held to have ratified or waived the alleged fraud practiced upon them by appellees.
"Completion of a transaction does not waive the right to damages for the fraud of a person who is not a party to it. The mere fact that a principal completes the transaction negotiated for him by his agent does not thereby waive the right of action against the agent for his fraud in the course of the negotiations." 24 Am. Jur., Fraud and Deceit, § 216.
"* * * If the principal seeks to ratify or affirm the transaction, he may accept the situation and compel an accounting for any profits which the agent has made, or, if the property has passed to a third person, he may compel a return of the proceeds or profits." 3 Am.Jur.2d, Agency, § 230.
In Robertson v. Chapman, 152 U.S. 673 at 681 (1894), 14 S.Ct. 741, at 744, 38 L.Ed 592, the Court said:
"* * * If an agent to sell effects a sale to himself, under the cover of the name of another person, he becomes, in respect to the property, a trustee for the principal, and at the election of the latter, seasonably made, will be compelled to surrender it, or, if he has disposed of it to a bona fide purchaser, to account, not only for its real value, but for any profit realized by him on such resale. * * *"
Finally, the trial court entered what was designated as a summary final decree. In order for a summary decree to be granted there must be no genuine issue of material fact in dispute. In the instant case, we believe there are many such disputes.
On the basis of our holding that the allegations of appellants' complaint are sufficient to state a cause of action and that genuine material issues of fact do exist, we affirm in part, reverse in part, and remand for disposition consistent with this opinion.
PIERCE, J., and HODGES, JOHN G., Associate Judge, concur.
NOTES
[1] Cf. Storrs v. Storrs, 130 Fla. 711, 178 So. 841 (1937), wherein the court held that a purchaser of property who had been induced to buy because of the fraudulent representations of the vendor may stand by the sale even after discovering the fraud and recover damages therefor.